## Farish *v.* The State.

Under the provisions of the revised constitution, and the act of the legislature of *1833,* authorising suits against the state in the court of chancery, suits may be brought in that court against the state, whether matters of equity or law jurisdiction.

APPEAL from the superior court of chancery.

Edward F. Farish filed his bill of complaint in the superior court of chancery, to recover of the state damages sustained by him for the breach of a contract entered into between the agent of the state legally authorised, being the state architect, and Farish, for performing all the carpenter's work on the new state house then being erected.

The complainant alleged that he had been at great expense in procuring and hiring workmen to perform said labor; that he had always been ready to perform the same, but had been delayed and prevented by the agents of the state, and that the contract had finally been taken from him and given to others, to his great damage, loss, &c.

Bill prayed, that on the hearing an issue of *quantum damnificatus* might be awarded, and that upon the finding of a jury in favor of complainant, a decree should be rendered in his favor, &c. And for such other and further relief, &c.

The attorney general on the part of the state filed a general demurrer to the bill, which was sustained by the chancellor, and the cause brought to this court by appeal.

The suit was instituted under the authority of the act of the legislature of this state, which was passed in 1833, which provides that hereafter it shall be competent for any person or persons, deeming him, her, or themselves body politic or corporate, to have a just claim against the state of Mississippi, to exhibit and file a bill in equity against the state. This law was adopted in pursuance of the 10th sec. of the 7th article of the constitution of this state, which provides that the legislature shall direct in what

manner, and in what courts, suits may be brought against the state.    It was insisted by the attorney for the state, in support of the demurrer to the bill in this case, that the act of the legislature of 1833 is repugnant to the constitution of the state, because it assigns to chancery jurisdiction, a subject confessedly of common law cognizance.    The question was submitted to this court at a former term, when the decree of the chancellor was affirmed. The opinion was not satisfactory to the bar, and a re-argument was ordered.

Hughes, for appellant.

This cause was submitted at a former term, upon which submission the court gave an opinion affirming the decree of the chancellor.    A re-argument has been ordered, and the only question now to be discussed is as to the correctness of the former opinion.

The substance of that opinion is, that the new constitution has established courts of law and courts of equity: to one has been given the powers and jurisdiction of a court of equity, and to the other the powers and jurisdiction of a court of law; and that it is not competent for the Legislature, in any case whatever, to vest in the one court any jurisdiction which, by the constitution, may belong to the other; and the subject matter of this suit being purely a question of law, a court of equity could take no jurisdiction of the same.

The counsel for the complainant respectfully asks permission to contest the correctness of this opinion.    This question depends on the construction of several sections of the new or revised constitution.

Before, however, noticing the constitution, it will be necessary to refer to the act of Assembly which authorises this proceeding. See act of January, 1833. c. 58. sec. 1. &c.

This act authorises any person or persons, &c. deeming him, her, or themselves to have a claim against the state, to file a bill in the superior court of chancery against the state of Mississippi, to which it is the duty of the Attorney General to file an answer, and if necessary an issue of fact arising out of the bill and answer is to be tried in the circuit court, and when such issue is tried the

same is to be certified into the chancery court, and thereupon such decree is to be had as will consist with law and equity; and upon such decree the Attorney General is authorised to appeal.— This statute provides a remedy where, by law, there was none before. Before its passage, however just a claim was which an individual had against the state, there was no remedy but to petition the Legislature and ask of its justice, what in the case of an individual could be demanded as a right. The remedy is complete and ample, and by it the complainant has a complete opportunity of manifesting his right, and in the event that his claim is established, to enforce payment. But it is said that there is no matter of equity set forth in the bill upon which the court of chancery could found a decree or give the complainant any relief; that the matter of the bill is only a matter of legal cognizance, and the relief, if any, is to be had only in a court of law. It is true, that, before the passage of the law referred to, the court of chancery could not take cognizance of the matters, *or such matters as are set out in the bill*; but by that act it is clear that the court can take jurisdiction. The law is, when a party deem himself to have a claim, he may file a bill and ask the relief to which he is entitled. What kind of a claim does the law restrict him to? either a legal or equitable claim or demand? *If he* deem that he has a claim, then he may proceed in chancery; and whether his claim is a legal or equitable one, the court is bound to interpose and give him the relief in the manner directed by the act. But again, it is objected, that if the Legislature intended that a bill might be filed in the chancery court upon a legal claim, that the Legislature overstepped the bounds of their authority,— and did a thing which they could not do; that the jurisdiction of the courts of law and equity are limited and defined by the constitution: *that what is confided to the one cannot be given by the* Legislature to the other. If by these propositions it be meant that it is not competent for the Legislature to give power to one class of courts to administer right and justice, according to the form and mode of giving relief in the other, then the proposition is true, but not otherwise.

The sixteenth section of the fourth article of the new constitution provides that, "a separate superior court of chancery shall

be established, with full jurisdiction in all matters of equity."—— What does the constitution mean when it says, " with full jurisdiction in all matters of equity?" Its clear meaning is, that in all controversies between parties, who were authorised to come into a court of equity to ask its aid or interposition, that in such matters the jurisdiction of the court should be full, and that jurisdiction should embrace all matters of equity; and upon such matters the jurisdiction of the court must necessarily be full, exclusive of the court of law, because the courts of law, by their constitution and mode of administering relief, were incompetent to do complete justice between the parties. In reference to such cases only could a court of equity take jurisdiction. But this only applies to a controversy where there is a right claimed by one party against another, and where the court had power to act against or for both, that is, where the jurisdiction existed as to the person of the parties. Upon a claim by an individual against the state there was no jurisdiction, as to one of the parties. The state, a corporation, by its judicial officers, had no jurisdiction of a suit against it by an individual. The suit was not, therefore, a controversy between parties, and was not within the rule as to the jurisdiction of the courts. There was no jurisdiction vested over such a case in any of the courts established by the constitution. The matter stood as it did by the English law. There a suit could not be commenced against the crown, of course neither the courts of equity or courts of law had jurisdiction of a claim against the crown. See 3 Black. Com. 253—5.

But suppose it to be true, that in the absence of provisions other than those establishing the courts and defining their power and jurisdiction, that the Legislature would have no power to give the jurisdiction in question, then it is insisted that in the same constitution there is a provision which gives to the Legislature ample power on the subject. The provision is this:—

" The Legislature shall direct by law in what manner, and in what courts, suits may be brought against the state." Sec. 10th, Art. 7th.

Although it might be true, that in the absence of this provision, the Legislature could not direct suits of equitable cognizance to be brought in a court of law, and *vice versa*, yet this provision

does authorise the Legislature to designate the courts and in what manner suits may be brought against the state; that provision is as much a part of the constitution as those other provisions which establish and define the power and jurisdiction of the courts. The provision, in the one instance, defines the power and limits the jurisdiction to a certain class of cases, subject, however, to such exceptions as may be made by the Legislature, by virtue of the provision last quoted. The Legislature are to direct in what manner and in what courts the suits are to be commenced. The manner is by bill, and the court, the court of chancery. In this the Legislature have carried out the practice in the English law. The manner is nothing more than the adoption of the petition of right, or the *monstrans de droit* in the English court of chancery, and for the same purpose.

Attorney General, *contra.*

Mr. Justice TROTTER delivered the opinion of the court.

The decree of the chancellor, in effect, pronounced the act of 1833 unconstitutional and inoperative. And the only question for this court is, whether that decree is proper. The opinion of the chancellor is rested upon the assumption that the law of 1833 disturbs the settled boundaries of power between the courts of chancery and the courts of common law, and the sixteenth section of the fourth article of the constitution is relied on to support this conclusion. That section provides that " a separate superior court of chancery shall be established with full jurisdiction in all matters of equity." It is certainly correct to say that when the constitutional law of the state has conferred upon one tribunal a specific power to be exercised by it exclusively, it is not competent to the legislature to vest it in any other jurisdiction. In the absence of such a provision, the legislature,,as the supreme power in the state, have a perfect authority to allot to the several jurisdictions of the country such subjects as may be deemed proper for their cognizance. This authority is a consequence of the general subjection under which the several courts of this state are held to the supervising and controlling power of the law making power. If then the constitution be silent as to the extent of the juris-

diction of a particular court, it may be determined by law. This proposition only maintains that the judicial tribunals of the state are creatures of the constitution and laws, which of course subjects their several powers to such form and modification as may be prescribed. The provision in the constitution which establishes the court of chancery as a separate tribunal with full jurisdiction in all matters of equity, does nothing more than to create the court. It leaves its jurisdiction to the determination of the common law, and neither enlarges nor limits the powers which it derives from that source. The "full powers in all matters of equity" which are secured to it by the provision for its establishment, were intended to embrace such subjects of jurisdiction as the chancery court has possessed by immemorial usage, or particular legislative enactments. If this be so, then it follows, that whenever the legislature create a new subject of chancery jurisdiction, it becomes immediately one of those "matters of equity" of which that court has full jurisdiction by the constitution. It is not the subject of the suit which determines the criterion of the jurisdiction of a court of chancery, so much, as the particular mode in which it proceeds, differing then, from a court of law principally in the mode of proof, of trial and of relief. The rights of parties are determined by the same rules of title and of evidence. Its distinguishing characteristic is the power it possesses of applying itself to the conscience and of obtaining a discovery on oath. And this power is constantly exerted, regardless of the subject matter in all cases, where without it, adequate justice cannot be done in the courts of law. The boundary of jurisdiction therefore between the chancery court and the courts of law is easily and readily controlled by the law. It depends upon arbitrary rules, which cannot for that reason be immutable. And accordingly, the subjects of power in the chancery court have been at different times modified or portioned out to the courts of law.

Under the constitution of 1817, applications for divorces were required to be made to the court of chancery in the first instance. Under that of 1832, they may be made to the circuit courts, which have full authority to give relief. At common law this power belongs to the ecclesiastical courts. If the new constitution had made no assignment of this power, could not the legislature have

conferred it upon the chancery court?   If this had been done, it would have been the creation of a new subject of chancery jurisdiction.   Would it not then have been fairly embraced by the general powers of the court over all matters of equity?   An act of the legislature of this state has delegated to the circuit courts the power to obtain a discovery on the oath of either party to a suit at law.   The constitutional right of the legislature, which passed this law, has not been disputed; yet it is as fully denied by the argument of the counsel for the state in this case, as the power to pass the act of 1833.   If the latter law is to be considered as a trespass upon the constitutional powers of a court at law, surely the former is equally in derogation of the original inherent powers of the court of chancery.

Other instances might be enumerated, but this is deemed sufficient to illustrate the argument.   This reasoning cannot, it is believed, have the effect to place the integrity of the jurisdiction of the court of chancery under the will of the legislative power.   It has been created by the constitution, and can never be hindered from the exercise of its full powers, in all matters of equity. The act of 1833 abridges none of its powers, curtails none of its jurisdiction.   On the contrary, it confers a new and additional jurisdiction.   In doing this it has not subtracted from the power of the other courts.   None of the courts of the state possessed this power anterior to the law which conferred it on the court of chancery.   The law has introduced a new remedy, and directed in what forum it shall be prosecuted.   It has thus defined the case before us to be a "matter of equity."   But there is nothing incongruous to the character of a court of chancery, in this new subject of jurisdiction.

In England this court has from time immemorial granted relief to the subject who may have a claim against the crown, and it does this without reference to the subject matter of the proceeding. And the king may by the decree of that court, be dispossessed of lands or personal property.   The remedy by *monstrans de droit* at the common law, is prosecuted in the court of chancery in England, and is quite analagous to the exhibition of a bill in our court of chancery, as authorised by the act of 1833.

The English constitution presumes that the king can do no

wrong.   He cannot therefore be commanded to appear in court, by the process of an ordinary suit.   Upon proof, however, that he has been advised to do any act, or is put in possession of any lands or goods, in prejudice of a subject's right, the law questions not but he will immediately redress the injury, and refers that conscientious task to the chancellor, the keeper of his conscience. The English chancery thus takes jurisdiction on account of the parties.   No reason can be perceived why the chancellor should not be suffered to perform the same conscientious office for our government.

The state cannot be sued in a court of law, and yet through its officers it may do the most serious injury to its citizens, which it would take great pleasure in redressing, when properly advised of it.   But who can be more properly selected for that purpose than the chancellor?   This reasoning would, it is deemed, be decisive of this question, if unaided by the 10th sec. of the 7th art. of the constitution, which directs the legislature to provide in what courts, suits against the state shall be brought.   This section of the constitution must be read in connection with the 16th sec. of the 4th article, the one which establishes the court of chancery. So read it will form an exception to the limitation of jurisdiction there defined.   This it is conceived would reserve the power in controversy to the legislature, however definitively the 16th section may be construed to have fixed and settled the jurisdiction.   The effect of this construction is simply to admit the limitation of jurisdiction, as declared in the opinion of the chancellor, subject to the modification or enlargement authorised by the subsequent provision.   For these reasons the decree of the chancellor must be reversed, and the cause remanded for further proceedings.